All right, the next case we're going to be hearing is Anderson v. Bickell, appellate number 17-1728. Good morning. My name is Timothy Work. I represent Rodney Anderson in this matter. At counsel table with me is Marcus Gadsden. If I could reserve three minutes of my time, Your Honor. Granted. In this case, Rodney Anderson has two distinct medical issues which give rise to two different kinds of claims. The first set of medical issues relates to he had a forklift accident before he entered the Department of Corrections, gave him back issues and apparently also leg and knee issues. Those give rise to his Americans with Disabilities Act claims. He also fell in July of 2011 while in the custody of the DOC, injuring his right hand and wrist. And eventually those gave rise to Eighth Amendment deliberate indifference claims. I would like to start off by focusing on the ADA claims. The first issue that I'll tackle is whether Mr. Anderson requested injunctive relief. And there's a number of cases that say when you make a generalized request for injunctive relief, when you say I want to have any relief that is just and equitable. Especially since he's pro se. Precisely, Your Honor. There is case law. I think Judge Caputo just didn't focus on that. Yes, Your Honor. He is pro se. He also has a number of mental disabilities which harm his ability to litigate even further. Let's assume that the complaint could be construed in the rules and case law permits us to view it as if injunctive relief was requested. Thank you, Your Honor. Okay. In that case, I'll move to money damages in the ADA case. So under the familiar rule of United States v. Georgia, Tennessee v. Lane, there's a three-part test. If you want to get money damages from an official in his or her official capacity, and that's a case where the real putty in interest is the state, as the Supreme Court has recognized in Hafer v. Melo. Let's assume that the first part of Georgia is satisfied that he has an ADA claim insofar as his library access portion of the ADA claim goes. Are you following me? Very well, Your Honor. As compared to the religion claim. Yes. Thank you, Your Honor. The second part of the Georgia test is you've got to show that there's a 14th Amendment violation. Here, if we were to conclude that his claim is not time barred, his 8th Amendment claim isn't time barred, and so you pass that, he wouldn't have had any actual injury from the access to the library, correct? I think that the reality that Mr. Anderson faced with respect to getting into and out of the library is that this is a man who, his ability to litigate really is impacted by whether he can get into the library. And the fact that his access to the library was impeded for so long, there's a number of- But the impact of that would have been a statute of limitations problem, right? That's the impact of that. There is certainly a statute of limitations problem. I will note, however, that in Lewis v. Casey, Justice Scalia did not specifically say you have to lose your claim in order to be able to have an actual injury for an access to courts violation. It would be limited, if you will. Yes, it would have to be limited in some specific way. But he began requesting, I think, in April of 2012. Yes, Your Honor. He got access in January of 2013, and there's a lot of back and forth of Tuesday or Saturday, when everybody clearly was there. And then the complaint was filed in 2014, in August. So he had access for over a year and a half to the library before his complaint was filed. Now, what injury did he suffer by being denied for that, say, six, eight-month period? Well, Your Honor, if you're able to get into a law library and actually research your claims as they're happening in real time, you can actually take note of the things that are significant to your claims. You can take note of the elements. So, for example, when he came back from surgery and was ordered several days later to go back to work, when he was in a hard cast at the time, that's something that, had he been able to go to the library, he could have taken a look at that and said, you know. Well, that's what, September of 2012? He was ordered back, it was either late September or early October of 2012, yes. Okay, but you can't point to anything specific, can you? Well, there is his... I shouldn't have said it that way. Can you point to anything specific? Yes, Your Honor. Specifically, he apparently has forgotten the name of the prison guard who ordered him back to work. And, you know, being per se, his filings have to be construed liberally. However, he does have to comply with procedural requirements, and I'm not aware of any... But the access to the library didn't interfere with his ability to remember who the alleged wrongdoers were. Had he been able to actually get into the library, I think that he would have been able to take note of the things that were important to his case. But as Judge Rendell said, there was only a period of time that that was at play. The rest of it, he had access to the library. We can tell from his own grievances where he was complaining about the frequency or the regularity of the access, not an absence of access. Correct? For the remainder of the time, it's true that... Well, I would push back against that a bit because even though he was able to get up to the library, he still had to go up and down stairs, and this is a man for whom it is excruciatingly painful to get up and down stairs. So I can't say for certain, but I would suggest that there may be days when he is scheduled for the law library and he says, today I just can't do it. It hurts too much. Well, we all know that, right? That's not a threat. Well, I think construing his complaint liberally, that the court should construe it for the best arguments that his pleading suggests. What would a reasonable accommodation have been? There's a number of reasonable accommodations here. First, he could have been moved, as in the Baxter case, it was suggested that the plaintiff there could be moved to an ADA-compliant facility, of which I believe there's at least one in the Commonwealth. He also could have had law books delivered to him on a timely basis. He could have had legal aids. He couldn't access the library. How do you know what law books you're going to need? Well, he could also have legal aids assisting him, and I believe that the library is in the DOC system. They do have law librarians who can assist and perhaps guide you in the books that you would want to request. So let's assume that the statute of limitations was told under one of the doctrines, either the exhaustion doctrine or the equitable tolling doctrine. Yes, Your Honor. And the court has in front of it a pleading, because the claim that you're asserting he was unable to pursue with vigor is the Eighth Amendment claim, correct? That is correct, yes. Okay. So if the court were to conclude that an equitable tolling could apply, or even assuming it applied, the court's next question will be, okay, do these pleadings set forth an Eighth Amendment claim? Yes, Your Honor. Right? Let's assume for this question that the court were to conclude, even if timely, the pleas don't give rise to the deliberative and different standard of the Eighth Amendment. Assume that for the purpose of this question. Does he still have an 88 claim left? And if so, what is it? Does he still have an 88 claim left if he does not have an Eighth Amendment claim? Yes, the Eighth Amendment claim is found to be lacking because it doesn't give rise to deliberate indifference. Does he still have an 88 claim based upon library access? And if so, what is that claim? Well, he certainly has an ongoing violation for which there is injunctive relief that we discussed earlier. In terms of the 88 claim, I think that we still have, so in terms of just damages, he can be compensated for the pain he had to undergo in getting up and down to the library. But for this, we can still rely on the third prong of the U.S. v. Georgia test, the prophylactic enforcement of the 14th Amendment. And what that tells us, not only would there be an access to courts violation, this case would fall within the category of cases recognized by the Supreme Court of access to courts, but there would also be irrational disability discrimination, which this Court recognized in Bowers v. NCAA. But you still have the same statute of limitations, though. Well, no, I'm focused on the 88 claim. I am, too. Okay. I think the statute of limitations problem is not as severe in the 88 context because if there's a continuing violation, then it continues today. So he could even file another lawsuit today. On the religion claim, the pleading says there are alternatives to services, that is, televised services. His complaint doesn't say he doesn't have a television. And in fact, one of his grievances is, my cable was shut off, and he was complaining about it because of a commissary point. Would you agree, based upon those allegations, he has not stated a denial of access to religious services? I would not, Your Honor, because there is a right, as recognized by the Second Circuit, also as recognized by this Court in the United States, Experl-Jones v. Rundle, and I can provide a citation for that momentarily. There is a free exercise right to congregate worship, so he is permitted to be. . . in this case where there's an alternative, because as I understand his pleadings, his pleadings are he's assigned to a particular floor because of his physical condition, and presumably that is done for his safety, and the religious services are up on the fourth floor. So why isn't the Turner factor satisfied here with respect to these other. . . The pleadings demonstrate he has access. Your allegation now is slightly changed to he wants a congregational experience. Is that what you're now saying, that his pleadings should be construed to read? That's not what they said. They talk about denial, like no services. What it says is that he was trying to get up to the church on the fourth floor and that he was not permitted to get up there. If you look at his amended complaint, I think that that goes into further detail into why there was no reasonable accommodation made. I think construing that complaint liberally, he says some inmates have television, but you've got to pay for the cable, and no chaplain is coming down to my. . . the process we're going through right now. By looking at the complaints, I only see allegations involving three different people as it relates to the library, Eckerd, Hollabaugh, and Jeschnit. Am I correct? Because that's how I read it. So he requested to the COIDAC, which is the committee which deals with disability accommodations, and the warden, T. Bickle, both has the power as the warden to provide reasonable accommodations, and I believe was also on the COIDAC. I think his name is on the piece of paper saying your disability claim has been denied. Well, I'm looking at the complaint, and my question is, so it's Bickle, are there any others against whom a claim of a violation of the ADA as it relates to the library has been asserted? The most that I could see is Eckerd, Hollabaugh, and Jeschnit. Am I correct? Am I wrong? That is true that there is Bickle, and he also did include the . . . I'll just answer briefly, Your Honor. He also did include the COIDAC determination as an exhibit of the complaint, and therefore it should be construed as part of the complaint. All right. Before we let you go, I'll let Judge Rendell ask her question, and I'll ask Judge Nygaard. I want to ask you about the deliberate indifference claim. Yes, Your Honor. Who do you contend was deliberately indifferent, and what is there on the face of the complaint to support their actual involvement in the denial of his medical situation? So his deliberate indifference complaint focuses on Mary Showalter and C. Buzell. I looked at the sites that I think page 35 or 37 of your brief. I couldn't find Buzell really implicated. He said you're having your MRI and something else is being provided for you. I didn't see anything where he ignored what was being requested. What do you show against Showalter, her individual involvement? Well, Your Honor, against both Buzell and Showalter, I think what is happening here is they are slow-rolling the medical treatment to which Mr. Anderson is entitled. So he falls in July 2011. Immediately after he goes to Huntingdon in August 2011, he says, I have this, I was injured, my right hand and wrist. And they say you have sprained. It's sprained. Well, actually, Mary Showalter, there is an exhibit showing that on September 6th, and this is part of his bottom tier restriction order, she recognizes that he had a fracture that was in a splint at the time. So he comes to Huntingdon in September 2011, and then he eventually sees a doctor in October. That doctor says, okay, you need to go to an orthopedist. And then two or three weeks later, it's Anderson who has to go to Showalter and Buzell and say, so the doctor told me I have to see this specialist. Has that been scheduled? And they basically tell him, you know, just hold tight. And then his MRI is in February? His MRI is in February, but before we get there, you know, he's told in October he has to see a specialist. Eventually that's scheduled for December. And then in December, the orthopedist says, you're going to have to get an MRI. Now, has he been requesting his medical records all along? He has been, he requested his medical records. Because he doesn't know he has a fracture, is that correct? He knows that he is injured. But what he does not know is the extent of his injury. He doesn't know whether the delay in treatment is further harming him. Eventually he discovers that he has a subluxation, which is where you have a tendon which shifts in the wrong way. And he certainly doesn't have enough medical knowledge to know that. Now, I would say that there's a number of medical issues where you can continue to feel pain, but you don't know if that's because it's just something that cannot be treated, or if it's because your doctor is giving you insufficient treatment. But going back to the MRI, again, it's Mr. Anderson who has to ask, has this MRI been scheduled? And somehow it's only after he asks the scheduling questions that his follow-up appointments are actually scheduled. After the MRI, which is in February or March of 2012, it takes another seven months before he can get surgery. And then he goes back to work two days later. He's ordered back to work two days later. So for the DOC to argue that he knew in July 2011 that he was injured, the real injury here is his treatment is being, again, it's being slow-rolled. He cannot reasonably discover what sort of added injury is occurring here. He's told it's a sprain, basically. Throughout he's being told that it's a sprain, and throughout he's being told that he's being given medically appropriate treatment. So I don't think the DOC can say, on the one hand, your treatment is appropriate, but then, on the other hand, say, oh, well, you should have known. Judge Nygaard, do you have questions for counsel? I have no other questions. Thank you. All right. Counsel, we'll see you on rebuttal. Thanks. Thank you, Your Honor. Counsel, Your Honors, Raymond Dorian for the Department of Corrections. First, I want to indicate I'll be splitting my time with Attorney Hatzel, 12 minutes for me and three minutes for Attorney Hatzel. Are you divided by subject or parties? Parties. We represent the Corrections Appellees. He represents the medical defendants. First, we want to make clear to the Court we are conceding the sufficiency of the prayer for relief and that it does encompass injunctive relief. Addressing the issue of ADA and the abrogation of sovereign immunity, under the three-part test, we believe that it is not warranted that sovereign immunity be abrogated in this case or that the Congress have been found to have validly abrogated under these circumstances. First off, we do not believe there has been an ADA violation shown. Mr. Anderson did have access to the law library, although not as often or on the times that he wished. Are you contending that he was not disabled? No, we do not dispute that because of the broad definition under the amendments to the ADA. As the exhibits to his complaint indicate, he was accommodated numerous times with regard to the law library. How was he accommodated? He was given times when he could go to the law library. That's not really an accommodation. That's just saying the law library is open for business. To be accommodated, they have to do something in light of his disability out of the norms, such as send aids to his cell or provide books or do something, have a mini-library or some shelves on the floor where he resides. Would that be an accommodation? Yes, it would. My understanding is that books are delivered to inmates on the first floor, though that's not on the record. I will point out this is only one floor up. If you have trouble with stairs, one floor, two floors, it's still a problem. Right. I think there's a misunderstanding with regard to the medical restriction of bottom bunk, bottom tier. That has been misinterpreted to mean he could not walk up a flight of stairs from the bottom tier. The bottom tier, bottom bunk restriction purely refers to his housing situation, that he would be housed on the bottom tier. Some of his grievances and his requests said, I have this restriction and therefore I can't go up the stairs or else I'm going to be disciplined. Didn't someone disavow that notion, if that's correct? I don't know if anyone ever disavowed him of that notion, but he was never threatened. There's no allegation he was ever threatened with a misconduct or given a misconduct for going up to the law library on the second floor. I'll point out that the case law indicates that plaintiffs are not entitled to accommodations of their own choosing. Huntington is one of the older institutions. It's an older arrangement and layout. It's not the most ideal layout. And the staff there are dealing with the situation that they have in front of them. I'll also point out that he did have access to legal aids once he got up to the law library, and that's indicated in the attachments. But isn't his contention is his alleged disabling condition made it painful for him to ascend the steps to get to the library? Yes, he does allege that, Your Honor. And is that allegation sufficient to say that there's been a violation of the ADA? Because he hasn't been accommodated to address the pain that he asserts he suffers. Well, we believe that he was accommodated to the extent that the physical plan permitted it at Huntington, given the limited resources that they have. But I don't think employers can do that. I mean, you know, given the limited resources, et cetera, I think the law applies across the board that employers or people who are here, would be the prison, have to, if it's a reasonable accommodation. Now, you know, if he was saying, you know, that he wanted, you know, 50 shelves of books brought to his cell, that would not be a reasonable accommodation. But would you not agree there were a few things that they could do to make his access easier by bringing things down to the first floor? Yes, Your Honor. And I believe that that's something that is done presently and has been done in the past. Since this case is dismissed, I haven't done a lot of discovery, so I don't know exactly what happened in his situation. I note that he's still at Huntington, and I also note that we have a separate procedure for requests for reasonable accommodations under the DC ADM 006 policy. He asked for things and he was told, you know, get a form or go to the medical people. It was rather dismissive of his complaints, if you will. I don't see anything in the grievances or their grievances and their requests, and a lot of them said basically, you know, go get a form or, you know, take this up with medical. Well, in defense of the prison staff, they deal with hundreds of inmates each day, and they can't devote as much time as they may have wished to each individual. On the second prong, if I may proceed, of the Georgia test, there's no actual violation of the 14th Amendment based on denial of access to the courts. Lewis v. Casey severely limited the holding in Bounds v. Smith. There's no freestanding right to a law library. He must show an actual injury. But that third prong in Georgia, your brief suggests that it's a conjunctive test and that you need to satisfy all three. Isn't it a fact that you either have to show a 14th Amendment violation, which you've explained why it's not shown by virtue of the Lewis case and Bounds, but also the alternative is can you show that it is a violation that Congress would have accepted as one for which sovereign immunity should be pierced, and that would be the Tennessee case. We've got access to courts and religion here. We've got two aspects that are paramount. Yes, Your Honor. I know Mr. Attorney Work has indicated he thinks the second and third prong are alternate. That's not the language in Georgia, but it says and. It doesn't say or. I know it says and, but the language is insofar as the misconduct. This is how our court articulated in Bowers v. NCAA. Insofar as the misconduct does not violate the 14th Amendment, which is prong two, determine whether Congress has nevertheless found it to be the class of conduct for which abrogation should be granted. So although there is a conjunctive and, isn't it fair to say it's an alternative way to satisfy the second part of Georgia?  But I don't think we're precluded from our position that sovereign immunity should not be aggregated with folly. I believe the case will indicate, including Tennessee v. Lane, that this is a fact-specific analysis. It's a case-by-case analysis, and that in the case of Tennessee v. Lane, the court specifically indicated it was limiting its holding to the facts in that case, that was not an inmate case. They were lay people that were paraplegics and had trouble accessing the courthouse. That had to do with denial of access to judicial services. There's no allegation of denial of access to judicial services in this case. No one stopped Mr. Anderson from filing anything he wanted to file in the federal courts, and he did, in fact, file complaints and amended complaints in the federal courts. So I think we're not bound, this court's not bound by the holding in Tennessee v. Lane with respect to the third prong, the congruence and proportionality prong under city of Byrne. And, in fact, there's many reasons why the remedy under Title II is greatly more expansive compared to the 14th Amendment. The Title II applies to all prison programs and services. It's not limited in scope. It turns what compared to the Constitution with respect to access to the courts. That's a limited remedy. It's a limited claim. ADA is greatly disproportionate with respect to the remedy it imposes under denial of access to the law library. So we believe that there's numerous reasons why the third prong is not met. With respect to the ADA religion claim, is your position that he hasn't denied access to his ability to exercise his faith? With respect to the faith, as the court has pointed out and indicated in the exhibits, the Sunday services are transmitted by TV, cable TV. Within the prison, he refers to having cable TV. So if that's what he wanted to do, he could attend by TV, although it was not in person. And as Your Honor has pointed out, the Turner test applies to the First Amendment claims such as this. Also, the heart versus horn. And one of the factors they look at is whether or not the inmate had an alternate means of practicing his religion. Though I put it to view that he could read the Bible, he could pray in his cell, he could fast, in addition to watching services on the television. So I don't believe he's proven a violation of his right of free speech, excuse me, his right to practice his religion, with respect to the second prong of the Georgia test. And so I believe that just to summarize that all three prongs have not been met with respect either to the access to the law library or the right to practice his religion. Counsel, I just want to ask Judge Nygaard if he has any questions for you. I do not. Thank you. Thank you. All right. Thank you. Good morning, Your Honor. My name is John Hatzell. I represent C. Bruzel. My client was never joined in the action. He would never serve with the original complaint. That was recognized by the lower court judge who decided to allow for an amended complaint. And if the amended complaint stated a claim against my client, he would have authorized service. But at this point, my client was never joined in the action. However, assuming that there was, he screened the complaint, there was no reason that the complaint stated a claim of deliberate indifference because it really only involved allegations that there were three requests to staff which were responded to. And that's the entire claim against my client. Do you only represent Bruzel or do you represent all the people? Just Bruzel. So there's no one here representing Showalter or any of the others, correctly? They're all corrections employees. I represent them. I understand them to be medicals too. We may ask you to come back then and address something having to do with Showalter. So that's all I have. Thank you, Your Honor. I'm sorry. My guard would like to hear from you. I'm sorry. My guard. I have no questions. All right. Counsel, we're going to Mr. Dorian, yeah. Yeah, we're going to ask Mr. Dorian to come back and take the rest of your time because we can ask these eighth amendment questions. How's everyone doing? How about Showalter? She responded to several of his grievances. I'm looking at 232 and 233. He asked for assistance and she said, you know, we deal with disabilities on an individual basis. Well, that doesn't seem to be much of a response. And then she says, get a form. I mean, there's a lot of citations by the appellants to places where she seems to not have been forthright or helpful and specifically counsel aversed that she knew he had a fracture and yet this medical treatment seemed to be horribly delayed over time without a whole lot being done. Can you respond to why this would not at least be a threshold deliberate indifference claim? Well, Your Honor, I think for the proved deliberate indifference under the eighth amendment, you must show that the treatment was denied or delayed for non-medical reasons. I don't think that that's been shown in the pleadings. With respect to her liability, she is a health care administrator. She sees that the contract with the medical vendor who is not a DOC employee or not part of the Department of Corrections, that they comply with the contract and that she follows up on requests for outside consultations, things like that. She does not decide what treatment inmates receive. So that was the basis for her being dismissed for lack of personal involvement. Well, he aversed that she was personally involved and responsible. So wouldn't we have to await discovery to find out a little bit more about your take on her responsibilities? That's true, Your Honor. You have to assume that. May I go back to the third prong of the City of Georgia test? We really wanted to ask you about these eighth amendment claims. Okay. We've heard you on that, City of Georgia. On the eighth amendment claims, though, your adversary has described it. I'll use his words, slow rolling. Is it your review, and if not, why not, that the pace at which there was responsiveness to Mr. Anderson's claims deliberately indifferent? And if not, how can we infer from these pleadings that there wasn't indifference here? Well, Your Honor, I think that's a hard threshold. Deliberate indifference is not the same as medical malpractice, as you're aware. And that's a much lower test to prove. I don't think if you look at all the treatment, he received MRIs, he received X-rays, he received outside consultations with orthopedic specialists. He had ultrasounds, CAT scans. He had two surgeries to his hand or his wrist. The second surgery was necessitated because he was put back to work two days after the previous surgery. I mean, do you really go back to work in a kitchen using your hands two days after surgery? Well, Your Honor, as I indicated before, I haven't done any discovery in this case, so I don't know what exactly happened there. That's the averment. That's the averment. But, I mean, as I understand it, Estelle v. Gamble says you must show that there is delay or denial of medical services for non-medical reasons. And I don't see that anywhere here. He doesn't say they had a grudge against him, that they were sitting on their hands, that they didn't like him because he was a litigator. Well, it's not that you have to show the non-medical animus. But if it was for medical reasons, then that takes you out of it. But here there is an absence of – it's not like they said, well, we aren't going to do the surgery for seven months because we need to let it heal or something. So I think when you say for non-medical reasons, you know, you don't have to prove an animus as such. It's just there is no excuse for why the treatment wasn't given. Would you accept that clarification? At this stage, yes, Your Honor. Though I would point out that the staff there deals with hundreds of inmates each day and that it may take a while to get surgery with an outside doctor. Not all doctors want to treat these cases. Was your reason for articulating the various MRIs, X-rays, CAT scans, surgeries, et cetera, because your view is that this is – if there was a delay, it's malpractice if it's anything, but it's not an Estelle v. Gamble indifference. Yes, Your Honor. Is that your position? Yes, Your Honor. Let me just see if Judge Mygaard has any questions on the Eighth Amendment issue.  Okay, thank you. Thank you, Counsel. All right, thank you. Okay. Mr. Work, we'll hear on rebuttal. Thank you, Your Honor. I'd like to return very briefly to a question that you asked before regarding the practice of religion. As my colleague has noted to me, part of the right to congregate religious services, it's an important part. If it's an important part of someone's religion to be together with others when practicing religion, a court can't really second-guess that. And in this case, there might be a reasonable accommodation in, for example, having other members of Mr. Anderson's faith come to his cell. Another thing about the cable TV, we cited a case from the Fourth Circuit, Walby Wade, which although not cited for this specific purpose, the facts, I think, are similar. There was a Muslim inmate who wanted to practice Ramadan. He was required to prove that he had an earnestly held religious belief. The way the prison said he had to prove that was by showing that he had a prayer rug or a Koran or something else that he would have to purchase. The Fourth Circuit said, no, you cannot require them to buy something in order to establish that they have an earnestly held. I don't know if anybody was suggesting that there was an obligation to purchase. It just seemed to corroborate the reasonable inference from the complaint. The complaint suggested those who can see television can see of services, but he doesn't allege, I didn't have a TV. And then his grievance says, you cut my cable. The cutting of the cable wasn't in connection with, and therefore I can't observe my religious services. It had to do with some commissary error. The only point I bring that up for is simply to say that the reasonable inference is he had access to services. And this is an ADA case. That's what this claim is. It's an ADA claim that I've been deprived access to certain types of services. Yes, you're right. It's not a First Amendment religion claim freestanding. Well, he is, well, again, if you look at the amended complaints, there is a section there where. The cause of action in your brief that you asked this Court to consider were ADA based. ADA religion, ADA law, and Eighth Amendment. There was no briefing on the First Amendment claim per se. The straight up, to the extent it's even alleged, and I think it's really more an ADA claim. I'm not being critical. I think you construed the complaint as crafted. Okay. Very well. Then I'll move on. So I'd also like to push back on something that a prison counsel mentioned. They said that the ADA is, its remedy is greatly disproportionate. And I think that this Court recognized in Bowers v. NCAA that in the educational context, the ADA only applies to persons with disabilities and it only requires reasonable accommodations. And based on that reasoning, the ADA's remedy was proportionate, was congruent under the United States seizure of due test. And going back to the Eighth Amendment claim, relying on a case from this circuit, which was the Monmouth County v. Lanzaro case, the Eighth Circuit has held that part of the Eighth Amendment standard is to receive prompt medical attention. That's on a case called Johnson v. Bowers at 884 Federal 2nd, 1053. And in the Monmouth County case, this Court also held that the denial or delay of medical services can make out a serious medical need, which is one aspect of the Estelle v. Gamble standard. And also held that a prison cannot, with deliberate indifference, opt for the easier and less efficacious treatment, which I think is what happened here. I see my time has run out. Okay, thank you. Thank you. The Court thanks all counsel for their arguments, and especially thanks SEPTO and Johnson for allowing you folks to accept the Court's appointment. And thank you for the excellent briefing. This is a difficult case, and I think you all did a really good job.